NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0262n.06
Filed: April 14, 2006

No. 05-3788

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


| | | |
|---|---|---|
| TERMINAL WAREHOUSE, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE SURFACE |
| CSX TRANSPORTATION, INC.; SURFACE | ) | TRANSPORTATION BOARD |
| TRANSPORTATION BOARD; UNITED | ) | |
| STATES OF AMERICA, | ) | |
| | ) | |
| Respondents. | ) | |


Before: SUHRHEINRICH, ROGERS, and COOK, Circuit Judges.


COOK, Circuit Judge. Respondent CSX Transportation sought and received permission from Respondent Surface Transportation Board to abandon a stretch of track servicing Petitioner Terminal Warehouse. Terminal then filed a complaint with the Surface Transportation Board ("STB"), seeking damages from CSX for breaching its common-carrier duty and asking the Board to find the track-abandonment void. The STB dismissed Terminal's damages complaint and determined that CSX properly abandoned the track. Terminal petitions this court for review of the STB's decision. Because the STB did not act arbitrarily or capriciously or otherwise abuse its discretion, we deny the petition for review.

I

CSX owned a railroad bridge that was damaged when a third party attempted to install fiber optic cable along the bridge. The damage rendered the bridge structurally unsound, and CSX removed the bridge rather than repair it. The removal of the bridge cut off access to the "Lumber Lead Line"—a .07-mile section of railroad on which a Terminal facility sits. After it removed the bridge, CSX issued an embargo.[1] CSX then sought an exemption from the normal procedures governing abandonment of a line, certifying, as required by STB regulations, that over the last two years "no local traffic ha[d] moved over the line" and that no complaint "regarding cessation of service over the line" had been decided in favor of a complainant or was then pending. 49 C.F.R. § 1152.50(b). Upon being granted the exemption, CSX abandoned the line.

Terminal, who last used the line thirteen months prior to the damage and twenty-six months prior to the abandonment, asked the STB to revoke CSX's exemption, arguing that CSX obtained the exemption using "false or misleading statements." Specifically, Terminal argued that CSX's statement that no local traffic had moved over the line in two years was misleading because CSX did not disclose that the Line was embargoed for part of that time. Terminal also filed a complaint seeking damages for CSX's alleged breach of its common-carrier duty to provide transportation upon Terminal's reasonable request. The STB denied Terminal's petition to revoke CSX's exemption because the Board determined that CSX had not obtained its exemption through false or

---

[1]An embargo temporarily exempts a common carrier from its statutory duty to provide service upon reasonable requests for rail transport. *See GS Roofing Prods. Co. v. Surface Transp. Bd.*, 143 F.3d 387, 391-92 (8th Cir. 1998).

misleading statements. In the same decision, the STB dismissed Terminal's complaint for damages because it found that neither Terminal nor any other carrier had requested service during CSX's embargo. Terminal moved for reconsideration and filed this petition when the STB denied the motion.

## II

We uphold the STB's findings and conclusions "unless they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, . . . [or are] unsupported by substantial evidence.'" *City of Riverview v. Surface Transp. Bd.*, 398 F.3d 434, 439-40 (6th Cir. 2005) (quoting 5 U.S.C. § 706(2)) (first alteration in original). We review the STB's original merits determination rather than the STB's decision denying Terminal's petition for reconsideration. *See ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 279-80 (1987) (holding that, where a petition for reconsideration is brought only for "material error" and not for new evidence, an order denying reconsideration is unreviewable, and it is "irrelevant that the . . . order . . . discussed the merits of the . . . claims at length").

### A. Exemption Revocation

Terminal first argues that the STB erred in failing to revoke CSX's abandonment exemption. A typical application to abandon a stretch of railway requires a number of steps. *See* 49 U.S.C. § 10903. If a carrier meets certain conditions, however, it can seek an exemption from the usual

abandonment requirements. *See* 49 U.S.C. § 10502. One requisite to exemption is the carrier's certifying that no local traffic (that is, traffic that either originates or terminates within a particular stretch of rail)[2] has moved over the line in the last two years. 49 C.F.R. § 1152.50(b). The carrier must further certify that the proposed abandoned line is not the subject of any pending complaints regarding an illegal embargo or other cessation of service and that no such complaints have been successful within the past two years. *Id.*

### 1. Movement on the Line

A granted exemption is void if the notice of exemption provided to the STB contains "false or misleading information." 49 C.F.R. § 1152.50(d)(3). Terminal argues that such is the case here, because CSX certified that no traffic had moved over the line in two years but neglected to inform the Board that, for a year of that time, track damage and an embargo rendered such movement impossible. Prior to the damage, alleges Terminal, "the [line] was used on a regular basis." Its support for this allegation is: (1) it used the line on January 20, 2001; (2) another shipper used the line on March 10, 2001; and (3) "it is likely that other shippers . . . shipped goods on this rail line." Terminal maintains that the abandonment exemption is meant to apply to lines that are out of service because of lack of demand, not out of service because of track damage and embargoes.

None of this, however, renders CSX's notice of exemption false or misleading. First, the

---

[2]Traffic that merely passes through the stretch is called "overhead" traffic, and the carrier, to obtain an exemption, must certify that all overhead traffic can be successfully rerouted.

regulations clearly contemplate the possibility that a carrier will seek an exemption after its line has sustained track damage or has been embargoed; they require that the carrier certify not only that no local traffic has moved over the line for two years, but *also* that in that time no party has successfully complained of an improper embargo or other service failure, and that no such complaint was pending. Thus CSX's failure to disclose the embargo or the track damage to the STB does not render its certification false or misleading.

In addition, Terminal concedes that it last used the line over thirteen months prior to the bridge damage, and no evidence supports Terminal's contention that "another shipper used the line on March 10, 2001." Terminal merely speculates that some other shipper must have used the line on that date because, two years later on March 10, 2003, CSX certified that no local traffic had moved over the line "for a period of at least two years." And Terminal's conjecture about the "likely" activity of other shippers likewise falls short.

2. Other Allegedly False Statements

In its reply brief, Terminal points to other statements in CSX's Notice of Exemption that it believes contained false or misleading information. But we have "consistently held that we will not consider . . . arguments" raised for the first time on reply. *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004).

Absent a showing that any of CSX's statements were false or misleading, the STB did not

abuse its discretion or act arbitrarily and capriciously in denying Terminal's petition for revocation of CSX's abandonment exemption.

### B. Terminal's Complaint

Terminal next turns to its damages complaint, arguing that the STB erred in dismissing the complaint. CSX, as a common carrier, generally must "provide . . . transportation or service on reasonable request." 49 U.S.C. § 11101(a). Where, however, a disability on the part of the carrier renders it incapable of performing its duty, it may issue an embargo and be temporarily relieved of this responsibility. *GS Roofing Prods. Co. v. Surface Transp. Bd.*, 143 F.3d 387, 392 (8th Cir. 1998). Thus CSX's embargo, if valid, provides it with a defense to Terminal's action for breach of a common-carrier duty. *See id.* CSX need not rely on its embargo as a defense in this case, however, because Terminal failed to demonstrate that it or any other shipper reasonably requested rail service.

### 1. Absence of a Reasonable Request

The STB dismissed Terminal's complaint because it found that Terminal's "supporting documents . . . fail[ed] to show that any shipper requested service from CSX[] between the date of the bridge damage and the date of the abandonment." *See* 49 U.S.C. § 11701(b) ("The Board may dismiss a complaint it determines does not state reasonable grounds for investigation and action."). The STB has discretion in determining whether an entity has made a reasonable request for service.

*Granite State Concrete Co., Inc. v. Surface Transp. Bd.*, 417 F.3d 85, 92 (1st Cir. 2005) ("[S]ection 11101 does not define what would constitute adequate service on reasonable request . . . . The STB has been given broad discretion to conduct case-by-case fact-specific inquiries to give meaning to these terms, which are not self-defining, in the wide variety of factual circumstances encountered.").

The STB correctly found that Terminal pointed to nothing to show that it (or any other shipper) actually requested service during the embargo. Terminal alleged in its complaint that its counsel's letter to CSX on June 13, 2003 "requested CSX immediately restore transportation services . . . and immediately provide transportation rail services to Terminal Warehouse." This "request," however, was made *after* May 23, 2003, the date on which CSX consummated its abandonment and effectively ended its duty to provide service on the line. In addition, the letter refers only to abstract potential transportation needs, rather than identifying any imminent need for service.

During the embargo, Terminal decided not to bid on one project, and it was not selected as the contractor for another. Terminal blames these missed opportunities on the lack of rail service and cites these two projects as evidence of the damages that it incurred as a result of CSX's allegedly illegal embargo. But Terminal does not allege that it requested service from CSX after learning of these opportunities, or even that it consulted CSX regarding the potential availability of rail service for either of the two opportunities.

Terminal's complaint alleged that "other affected shippers" requested service. But the

complaint seeks a finding that CSX "refus[ed] to provide transportation reasonably requested by *Complainant*." (Emphasis added.) Further, the three documents on which Terminal relies for this statement do not support it. Akron's Deputy Mayor's affidavit does not identify any shippers that requested service from CSX. The Ohio Rail Development Commission's *post-consummation* letter to *the STB* likewise does not identify any shippers that requested service; rather it asks the STB "to ensure the preservation of the rail infrastructure . . . for all current and future rail-dependent users." Similarly, the affidavit of B & F Polymers's president,[3] discussing the harm B & F will suffer "if this rail abandonment is not revoked," does not indicate that either B & F or Terminal requested service from CSX.

Finally, Terminal proffers an equitable argument that it did not request service from CSX because it was lulled into inaction when a CSX employee told Terminal's president that CSX "would likely" repair the line. But, as the STB pointed out in its decision on Terminal's Petition to Reconsider, Terminal's position that "it would have made a request for service but for [CSX's] equivocal statement" is unconvincing. Terminal's December 2002 e-mail to one of its potential customers belies its contention that it relied on any statement from CSX throughout the embargo period: "The Metro Regional Transit Authority is trying to buy the line from . . . CSX and we are discussing the reconnection of rail service from the north. Even if we work that out, it will be quite some time before the connection is made. My guess is at least 1 year." Further, a February 14, 2003

---

[3]B & F Polymers is a company that, at the time of the track damage and abandonment, was indefinitely storing two "hopper cars" on the line at Terminal's facility.

letter from Terminal's president indicates that Terminal knew of CSX's intention to abandon the line at least a month before CSX filed its notice of exemption.

Terminal did not show that it reasonably requested service from CSX, nor is Terminal entitled to relief on equitable grounds. Therefore, the STB did not act arbitrarily and capriciously or abuse its discretion when it concluded that Terminal's complaint did not "state reasonable grounds for investigation and action." 49 U.S.C. § 11701(b).

## 2. Discovery

Terminal also argues that the STB erred by issuing its decision prior to the completion of discovery. But Terminal's complaint hinged on its reasonable request for transportation from CSX, and evidence of such a request would have been within Terminal's control. And in the abandonment proceeding Terminal was not entitled to any discovery. We thus find no fault in the STB's procedure in this case.

## III

Because Terminal failed to point to any false or misleading information in CSX's exemption notice, the STB's decision to deny Terminal's petition to revoke the exemption was not arbitrary and capricious. Likewise, because Terminal did not "state reasonable grounds for investigation and action," 49 U.S.C. § 11701(b), the STB did not arbitrarily or capriciously dismiss its complaint. We deny Terminal's petition for review.